IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

————————————————————————X

RICHEMONT INTERNATIONAL S.A.; :
RICHEMONT NORTH AMERICA, INC.; :
CARTIER INTERNATIONAL A.G.; :
CHLOÉ S.A.S.; OFFICINE PANERAI A.G.; :
MONTBLANC-SIMPLO G.M.B.H.; :
MONTBLANC NORTH AMERICA, LLC; and :      Civil Action No.  11-cv-9322 (JGK)
CARTIER, IWC, VACHERON CONSTANTIN, :
BAUME & MERCIER, CHLOÉ, PANERAI, :
PIAGET, and JAEGER-LECOULTRE, EACH A :
DIVISION OF RICHEMONT NORTH :
AMERICA, INC., :
 :
            Plaintiffs, :
 :
      v. :
 :
MONTESOL OU, BANTAM INTER LP, :
UAB WESTCARTO, *et al.*, :
 :
            Defendants. :

————————————————————————X

**PLAINTIFFS' PROPOSED FINDINGS OF FACT AND
<u>CONCLUSIONS OF LAW CONCERNING DEFAULT JUDGMENT DAMAGES</u>**

Paul C. Llewellyn
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022
(212) 836-7828

Jennifer L. Co
KAYE SCHOLER LLP
3000 El Camino Real
2 Palo Alto Square, 4th Floor
Palo Alto, California 94306
(650) 319-4500

*Attorneys for Plaintiffs*

New York, New York
October 1, 2012

Richemont_Montesol - Default Judgment Proposed Findings re Damages.DOCX

Plaintiffs Richemont International S.A., Richemont North America, Inc. ("Richemont NA"), Cartier International A.G., Chloé S.A.S., Officine Panerai A.G., Montblanc-Simplo G.m.b.H., Montblanc North America, LLC, and Cartier, IWC, Vacheron Constantin, Baume & Mercier, Chloé, Panerai, Piaget, and Jaeger-LeCoultre, each a division of Richemont North America, Inc. (collectively, "plaintiffs"), by their undersigned attorneys, submit these Proposed Findings of Fact and Conclusions of Law Concerning Damages pursuant to the Court's July 31, 2012 Scheduling Order [Docket #32].

In an order dated June 29, 2012 [Docket #30], the Court held that plaintiffs are entitled to a default judgment against the defendants,[1] and referred this case to the Magistrate Judge for an inquest on damages.

Pursuant to the Court's July 31, 2012 Scheduling Order, the factual assertions herein are supported by citation to affidavits or other matter of evidentiary weight, namely, the signed declarations that were previously submitted in this proceeding and are of record in this matter, and which are specifically cited herein.  Plaintiffs respectfully submit that on the proposed findings and conclusions set forth herein, plaintiffs are entitled to an award of statutory damages and other relief as set forth herein.

---

[1]     In particular, plaintiffs sought a default judgment against the Default Judgement Defendants as defined in the Court's Order to Show Cause for Entry of Default Judgment dated June 13, 2012 [Docket #23], namely, defendants Montesol OU, Bantam Inter LP, and UAB Westcargo, all doing business as the domain names and websites set forth in Appendix A attached hereto, the partnerships and unincorporated associations identified by the foregoing domain names and websites, and any ABC or John Doe defendants who receive notice of the Order to Show Cause.  *See* Docket #23, p.2.

<u>**FINDINGS OF FACT**</u>

<u>**Plaintiffs and Their Marks and Products**</u>

1.      Plaintiffs are purveyors of luxury goods, including items such as jewelry,

watches, other goods incorporating precious metals and gems, personal accessories, leather

goods, and fragrances, among other things.  Plaintiffs have engaged in the sale of such products

for many decades, and, in some instances, one or even two centuries.  *See generally* Declaration

of Stacey Hallerman, dated December 19, 2011 ("Hallerman Decl.").

2.      As set forth in greater detail below, plaintiffs own the federally registered

trademarks CARTIER, CHLOÉ, PANERAI, PIAGET, JAEGER-LECOULTRE,

MONTBLANC, BAUME & MERCIER, IWC and VACHERON CONSTANTIN, which are

used in connection with plaintiffs' well known luxury watches, jewelry, leather goods and other

products, as well as a variety of stylized versions of those marks and product design marks

(together, the "Marks").  *See generally* Declaration of Stacey Hallerman, dated December 19,

2011 ("Hallerman Decl.") [Docket #6].

3.      Plaintiffs own the following existing, subsisting, and valid United States

trademark registrations, among others, covering the Marks:

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|------|---------------|------------------------------|
| **CARTIER MARKS** | | |
| CARTIER | 411,239 | Int'l Classes 8 & 14: Precious-metal ware-namely, the following articles made, in whole or in part, of precious metals or plated with the same; combs, jewel boxes, fobs, bracelets, watch bracelets and buckles therefore, not including watches, cuff links, shirt studs, brooches, earrings, eyeglass cases, cigarette cases, cigarette and cigar holders, cigarette lighters, humidors and ash trays, mirror frames, envelope openers, wallets, money clips, perfume bottles, desk sets, handbags, flatware and hollowware, |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| | | vases, tea and coffee services, pocket flasks, toilet articles, key chains, finger rings, compasses, candlesticks.  First Use in Commerce: December 31, 1859.  Reg. Date: January 9, 1945. |
| *Cartier* | 411,240 | Int'l Classes 8 & 14: Articles of jewelry for personal wear and for precious-metal ware-namely, the following articles made, in whole or in part, of precious metals or plated with the same -- viz, combs, jewel boxes, fobs, bracelets, watch bracelets and buckles therefor, not including watches, cuff links, shirt studs, brooches, earrings, eyeglass cases, cigarette cases, cigarette and cigar holders, humidors and ash trays, mirror frames, envelope openers, wallets, money clips, perfume bottles, desk sets, handbags, flatware and holloware, vases, tea and coffee services, pocket flasks, toilet articles, key chains, finger rings, compasses, candlesticks. First Use in Commerce: 1859.  Reg. Date: January 9, 1945. |
| *Cartier* | 411,975 | Int'l Class 14: Watches and clocks and wrist watches with wrist straps and bracelets attached for securing the same on the wrist of the wearer, and traveling clocks and watches with covers of leather, fabric and the like for protecting them while traveling.  First Use in Commerce: 1859. Reg. Date: February 13, 1945. |
| CARTIER* | 414,435 | Int'l Class 18: Combination pocketbooks and shopping bags, wallets, billfolds, key cases, card cases, leather clock cases, traveling cases, and overnight bags, both fitted and unfitted.  First Use in Commerce: 1859.  Reg. Date: June 12, 1945. |
| CARTIER | 414,604 | Int'l Class 16: Writing and letter paper-namely, letterheads, correspondence cards, envelopes with and without return address, envelope openers, ink stands, desk sets,, desk pads, desk calendars, address books, writing cases, memorandum books, pads, and fountain pens. First Use in Commerce: 1859.  Reg. Date: June 19, 1945. |

4

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| CARTIER* | 759,201 | Int'l Class 14: Watches and clocks.  First Use in Commerce: 1859.  Reg. Date: October 29, 1963. |
| CARTIER* | 759,202 | Int'l Class 14: Articles of jewelry for personal wear, not including watches; and the following goods of solid or plated silverware-namely, table flatware and hollow-ware, toilet articles, candelabra, bonbon-cases, jewelry cases, ((crosses, rosaries, ))and buckles.  First Use in Commerce: 1859.  Reg. Date: October 29, 1963. |
| CARTIER* | 758,858 | Int'l Class 16: Lead-pencils, magazine lead-pencils and pen holders.  First Use in Commerce: 1859.  Reg. Date: October 22, 1963. |
| CARTIER | 897,537 | Int'l Class 35: Retail jewelry store services, jewelry mail order services, jewelry appraisal services, and jewelry brokerage services.  First Use in Commerce: 1907.  Reg. Date: August 25, 1970. |
| *Cartier* * | 1,226,301 | Int'l Class 42: Retail consumer goods mail order services.  First Use in Commerce: 1922.  Reg. Date: February 1, 1983. |
| CARTIER* | 1,226,302 | Int'l Class 42: Retail consumer goods mail order services.  First Use in Commerce: 1922.  Reg. Date: February 1, 1983. |
| MUST DE CARTIER* | 1,291,984 | Int'l Class 14: Watches, clocks, jewelry, lighters made in whole or in part of precious metal.  First Use in Commerce: March 1976.  Reg. Date: August 28, 1984. |
| SANTOS* | 1,344,284 | Int'l Class 14: Watches.  First Use in Commerce: 1978.  Reg. Date: June 25, 1985. |
| PANTHERE DE CARTIER* | 1,365,478 | Int'l Class 14: Watches.  First Use in Commerce: July 1983.  Reg. Date: October 15, 1985. |
| SANTOS DE CARTIER* | 1,391,539 | Int'l Class 14: Watches.  First Use in Commerce: November 1978.  Reg. Date: April 29, 1986. |
| PASHA DE CARTIER* | 1,446,381 | Int'l Class 16: Pens.  First Use in Commerce: September 1, 1986.  Reg. Date: July 7, 1987. |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| TRINITY* | 1,927,987 | Int'l Class 14: jewelry made of precious metal or coated therewith.  First Use in Commerce: 1983. Reg. Date: October 17, 1995. |
| BAIGNOIRE* | 2,092,409 | Int'l Class 14: jewelry, precious stones, watches and clocks.  First Use in Commerce: Date not available.  Reg. Date: September 2, 1997. |
| PANTHERE DE CARTIER* | 2,351,631 | Int'l Class 14: Jewelry.  First Use in Commerce: N/A.  Reg. Date: May 23, 2000. |
| CARTIER DE LUNE* | 2,539,714 | Int'l Class 14: Jewellery, precious gem stones. First Use in Commerce: N/A.  Reg. Date: February 19, 2002. |
| CARTIER A L'INFINI | 2,673,995 | Int'l Class 14: Ashtrays, boxes and cases for watches, jewellery and cigarettes, coffee and tea services, candlesticks, cuff-links, pill-boxes, powder compacts, salt and sugar containers, trays for household purposes, all these made of precious metals or coated therewith; jewellery, precious gemstones; chronometers, clocks and watches.  First Use in Commerce: N/A.  Reg. Date: January 14, 2003. |
| AGRAFE* | 2,699,360 | Int'l Class 14: jewelry.  First Use in Commerce: Date not available.  Reg. Date: March 25, 2003. |
| *Cartier* * | 2,801,764 | Int'l Class 16: Books and magazines in the field of applied arts, art, horology, jewelry.  First Use in Commerce: N/A.  Reg. Date: January 6, 2004. |
| HIMALIA* | 2,934,297 | Int'l Class 14: rings, earrings, necklaces.  First Use in Commerce: Date not available.  Reg. Date: March 22, 2005. |
| CARTIERMANIA | 3,112,186 | Int'l Class 14: Cuff links, tie pins, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watchbands, boxes of precious metal for watches and jewelry.  First Use in Commerce: N/A.  Reg. Date: July 4, 2006. |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
|  | 3,208,458 | Int'l Class 14: Horologic and chronometric instruments, namely, watches.  First Use in Commerce: June 15, 1984.  Reg. Date: February 13, 2007. |
|  | 3,211,038 | Int'l Class 14: Horologic and chronometric instruments, namely, watches.  First Use in Commerce: June 15, 1985.  Reg. Date: February 20, 2007. |
|  | 3,282,739 | Int'l Class 14: Horologic and chronometric instruments, namely, watches.  First Use in Commerce: June 15, 1989.  Reg. Date: August 21, 2007. |
|  | 3,282,847 | Int'l Class 14: Horologic and chronometric instruments, namely, watches.  First Use in Commerce: June 15, 1996.  Reg. Date: August 21, 2007. |
| ROTONDE DE CARTIER | 3,418,630 | Int'l Class 14: Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery.  First Use in Commerce: N/A.  Reg. Date: April 29, 2008. |
| la doña DE CARTIER | 3,462,424 | Int'l Class 14: Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| | | bracelets, boxes made of precious metals for watches and jewellery.  First Use in Commerce: N/A.  Reg. Date: July 8, 2008. |
| BALLON BLEU | 3,476,888 | Int'l Class 3: Soaps for personal use; perfumery, essential oils, cosmetics, hair lotion. |
| | | Int'l Class 9: Eyeglasses, sunglasses, eyeglass frames and cases, magnifying glasses. |
| | | Int'l Class 14: Goods in precious metals and coated therewith, namely, cuff-links, tie clips, rings being jewelry, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery. |
| | | Int'l Class 16: Pens, fountain pens, ball-point pens, pencils, mechanical pencils, felt-tip pens, rollerball pens, document markers, writing brushes; sealing waxes; pouches, cases and boxes for writing instruments; inks for writing instruments and ink refills for writing instruments; note paper, writing paper, note pads, memo pads; name cards, envelopes, diaries; calendars; paperweights, erasers, pencil sharpeners, paper knives, pen and pencil holders; paintings, engravings. |
| | | Int'l Class 18: Leatherware, namely, briefcases, travelling sets in the nature of sets of suitcases and travelling bags, vanity cases sold empty, key cases; goods made of leather and imitations of leather, not included in other classes, namely, attaché cases, wallets, handbags, backpacks, travelling bags, wheeled tote bags, trunks, suitcases, purses not of precious metal, credit and business card cases, pouches; bands of leather in the nature of leather straps for use with bags; umbrellas, parasols, walking sticks, whips and saddlery. |
| | | Int'l Class 25: Clothing, namely, bathing suits, coats, cummerbunds, dressing gowns, fur coats and stoles, hosiery, jackets, pullovers, pajamas, robes, shirts, skirts, suits, sweaters, trousers, underwear, belts, braces in the nature of suspenders, gloves, mufflers, sashes for wear, scarves, shawls, suspenders, ties, bow ties; |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|------|---------------|------------------------------|
| | | boots, shoes and slippers, caps and hats. |
| | | Int'l Class 34: Lighters for smokers; smokers' articles, namely, cigarette holders, cigarette and cigar cases, cigar cutters, humidors and ashtrays. |
| | | Reg. Date: July 29, 2008. |
| ROTONDE | 3,496,125 | Int'l Class 14: Horological and chronometric instruments; jewellery of precious metal and precious stones; precious stones; articles in precious metals and their alloys, namely, cuff-links, tie clips, and watch chains, all sold through high-end luxury retail outlets.  First Use in Commerce: Date not available.  Reg. Date: September 2, 2008. |
| *Pasha de Cartier* | 3,557,455 | Int'l Class 14: Jewelry and horological instruments.  First Use in Commerce: October 28, 1985. Reg. Date: January 6, 2009. |
| CORDONS DE CARTIER | 3,595,006 | Int'l Class 14: Goods in precious metals and coated therewith, namely, key rings, cuff links, tie clips, rings, bracelets, earring, necklaces, and brooches; watches; chronometers; clocks; watch straps; watch bracelets; and boxes of precious metals for watches and jewellery.  First Use in Commerce: N/A.  Reg. Date: March 24, 2009. |
| DIAMANTS LEGERS | 3,814,704 | Int'l Class 14: Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches being jewellery, key rings, watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery, with all of the aforementioned goods featuring and/or incorporating diamonds.  First Use in Commerce: Date not available.  Reg. Date: July 6, 2010. |
| *Cartier* | 3,832,004 | Int'l Class 18: Leather and imitation leather goods, namely, suitcases, traveling bags, briefcases, wallets, change purses, clutch bags, handbags, chests in the nature of luggage and suitcases, sets of traveling bags, trunks and suitcases, skins; umbrellas; small leather bags in the nature of sleeves and pouches for |

9

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| | | merchandise packaging.  First Use in Commerce: N/A.  Reg. Date August 10, 2010. |
| CALIBRE DE CARTIER | 3,864,499 | Int'l Class 14: Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches being jewellery, key rings of precious metal or coated therewith; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery.  First Use in Commerce: N/A.  Reg. Date: October 19, 2010. |
|  | 3,898,366 | Int'l Class 14: Horologic and chronometric instruments, namely, watches.  First Use in Commerce: January 1, 1994.  Reg. Date: January 4, 2011. |
| LOVE BRACELET* | 1,005,286 | Int'l Class 14: Jewelry-namely, bracelets.  First Use in Commerce: 1970.  Reg. Date: February 25, 1975. |
|  | 1,078,675 | Int'l Class 14: Jewelry-namely, bracelets.  First Use in Commerce: 1970.  Reg. Date: November 29, 1977. |
|  | 1,372,423 | Int'l Class 14: Bracelets.  First Use in Commerce: May 1970.  Reg. Date: November 26, 1985. |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
|  | 3,162,410 | Int'l Class 14: Jewelry, namely, bracelets, watches, rings, charms, earrings, dog tag type pendants; cuff links; belt buckles made of precious metal.  First Use in Commerce: December 31, 1970.  Reg. Date: October 24, 2006. |
| LOVE | 3,637,776 | Int'l Class 14: Goods of precious metals and coated therewith, namely, cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches, and key rings; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewelry.<br><br>Int'l Class 16: Money clips, pens, fountain pens, ball-point pens, pencils, mechanical pencils, felt-tip pens, roller ball pens, document markers, pouches, cases and boxes for writing instruments, writing inks and pen ink refills, diaries, calendars, paperweights, paper knives, pen and pencil holders.<br><br>Int'l Class 18: Leatherware, namely, briefcases, traveling luggage sets, unfitted vanity cases, and key cases, goods made of leather and imitations of leather, namely, attache-cases, wallets, handbags, backpacks, traveling bags, wheeled bags, trunks, suitcases, purses, name card cases, credit card cases, and pouches; umbrellas.<br><br>Int'l Class 25: Clothing, namely, bathing suits, coats, cummerbunds, dressing gowns, fur coats, hosiery, jackets, pullovers, pyjamas, robes, shirts, skirts, suits, sweaters, trousers, underwear, belts, braces, gloves, mufflers, scarves, shawls, ties, bow ties, boots, shoes, slippers, caps, and hats.<br><br>First Use in Commerce: N/A.  Reg. Date: June 16, 2009. |
| Love Bracelet Design<br> | 3,776,794 | Int'l Class 14: Jewelry, namely, rings, bracelets, charms, earrings, made of precious metals.  First Use in Commerce: December 31, 1970.  Reg. Date: April 20, 2010. |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| | | |
| **PIAGET MARKS** | | |
| PIAGET | 679,984 | Int'l Class 14: Complete watches, large clocks, pendulums.  First Use in Commerce: N/A.  Reg. Date: June 9, 1959. |
| PIAGET * | 742,354 | Int'l Class 14: Watches, watch parts and watch movements.  First Use in Commerce: January 2, 1959.  Reg. Date: December 18, 1962. |
| PIAGET* | 968,969 | Int'l Class 14: Jewelry of precious metals-namely, bracelets, watch bracelets, rings, cufflinks, necklaces, and earrings.  First Use in Commerce: February 2, 1961.  Reg. Date: September 25, 1973. |
| MAGIC GARDENS OF PIAGET | 2,442,605 | Int'l Class 14: Cuff-links made of precious metals or coated therewith; jewellery, precious gemstones; chronometers, watches and clocks. First Use in Commerce: N/A.  Reg. Date: April 10, 2001. |
| PIAGET ALTIPLANO* | 2,464,407 | Int'l Class 14: Watches, clocks and chronometers.  First Use in Commerce: October 1, 1999.  Reg. Date: June 26, 2001. |
| MAGIC GARDENS OF PIAGET | 3,373,392 | Int'l Class 14: Cuff links of precious metals or coated therewith; chronometers, watches and wall clocks.  First Use in Commerce: N/A.  Reg. Date January 22, 2008. |
| PIAGETeam Dream | 3,580,929 | Int'l Class 14: Watches, chronometers, watch straps, watch bracelets.  First Use in Commerce: November 15, 2006.  Reg. Date: February 24, 2009. |
| **JAEGER-LECOULTRE MARKS** | | |
| JAEGER-LECOULTRE* | 1,339,139 | Int'l Class 14: Watches and clocks except dashboard clocks for land vehicles, boats and planes.  First Use in Commerce: December 1968. Reg. Date: June 4, 1985. |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| <img JAEGER-LECOULTRE> * | 1,402,084 | Int'l Class 14: Watches and clocks except dashboard clocks for land vehicles, boats and planes.  First Use in Commerce: 1969.  Reg. Date: July 22, 1986. |
| **CHLOÉ MARKS** | | |
| * | 950,843 | Int'l Class 25: Ladies' articles of clothing for outerwear-namely, frocks, dresses, coats, costumes, suits, skirts, blouses, vests and pant-suits; vests, hats and ties; and ladies' shoes.  First Use in Commerce: N/A.  Reg. Date: January 16, 1973. |
| * | 1,182,862 | Int'l Class 14: jewelry-namely, dress jewelry. First Use in Commerce: December 31, 1974.  Int'l Class 25: clothing-namely, belts, scarves, frocks, dresses, coats, costumes, suits, skirts, blouses, vests and pantsuits, hats, fur coats, jackets, stoles, capes.  First Use in Commerce: September 30, 1970.  Reg. Date: December 22, 1981. |
| CHLOE* | 1,491,810 | Int'l Class 3: perfume, toilet water, cologne, body lotion, body cream, personal deodorant, beauty or bath soap.  Int'l Class 18: handbags, purses.  Int'l Class 25: bathrobes, bathing suits, coats, dresses, hats, jackets, shirts, blouses, trousers, skirts, scarves, shoes.  First Use in Commerce: N/A.  Reg. Date: June 14, 1988. |
| SEE BY CHLOE | 2,641,982 | Int'l Class 18: travelling bags, holdalls, tote bags, handbags, credit card case; purses, wallets, key cases, coin purses, parts and fittings for all the aforesaid goods.  Int'l Class 25: clothing, namely, trousers, skirts, suits, dresses, jackets, blousons, shirts, coats, cardigans, sweaters, blouses, shorts, t-shirts, pullovers, scarves.  First Use in Commerce: N/A.  Reg. Date: October |

13

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| | | 29, 2002. |
| CHLOE* | 2,745,487 | Int'l Class 14: Jewelry.  First Use in Commerce: N/A.  Reg. Date: August 5, 2003. |
| | 3,291,996 | Int'l Class 18: Goods made of leather and imitations of leather, namely, handbags, purses, traveling cases, traveling bags, luggage, backpacks, toiletry cases sold empty, credit card cases and holders, key cases, coin purses.  First Use in Commerce: 1994.  Reg. Date: September 11, 2007. |
| PADDINGTON | 3,398,517 | Int'l Class 18: handbags, purses, wallets not intended for children.  First Use in Commerce: Date not available.  Reg. Date: March 18, 2008. |
| SEE BY CHLOE | 3,696,923 | Int'l Class 25: Footwear.  First Use in Commerce: January 2009.  Reg. Date; October 13, 2009. |
| MONTBLANC MARKS | | |
| MONTBLANC | 776,208 | Int'l Class 16: Fountain pens, cases for fountain pens, ball point pens, ball point cartridges, ball point paste, mechanical pencils, lead for mechanical pencils.  First Use in Commerce: 1913.  Reg. Date: September 1, 1964. |
| MONTBLANC* | 1,884,842 | Int'l Class 14: jewelry; watches and time pieces. Int'l Class 18: purses, handbags, small leather articles and accessories, namely wallets and billfolds, and luggage. First Use in Commerce: N/A.  Reg. Date: March 21, 1995. |
| MONTBLANC* | 2,820,561 | Int'l Class 37: maintenance and repair of writing instruments and accessories for writing instruments.  First Use in Commerce: N/A. Int'l Class 42: retail store services for luxury items, namely, stationery, desk sets, jewelry, watches, eyewear, leather goods, writing instruments and parts and fittings therefor; design services for others for luxury items, namely, stationery, leather goods, writing |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| | | instruments and parts and fittings therefor.  First Use in Commerce: July 1995. Reg. Date: March 9, 2004. |
| MONTBLANC* | 2,415,189 | Int'l Class 25: Clothing accessories, namely, dress belts made of leather with belt buckles of precious and semi-precious metals distributed in channels of commerce where luxury articles are sold and promoted.  First Use in Commerce: N/A.  Reg. Date: December 26, 2000. |
| MONT BLANC  * | 2,515,092 | Int'l Class 16: Stationery, namely, envelopes, writing paper, writing cards.  First Use in Commerce: N/A.  Reg. Date: December 4, 2001. |
| MONT BLANC | 3,059,776 | Int'l Class 6: money clips, key rings, knife handles, all being made of metal. Int'l Class 8: pocket-knives, razors; cases for pocket knives, cases for razors. Int'l Class 9: graduated rules, barometers. Int'l Class 21: drinking flasks not of precious metal; serving trays, butlers trays, cups, all being not of precious metal; shaving brushes, shaving brush stand. Int'l Class 25: clothing accessories, namely, neckties, scarves and shawls distributed in channels of commerce where luxury articles are sold and promoted. First Use in Commerce: N/A.  Reg. Date: February 21, 2006. |
| MONTBLANC NIGHTFLIGHT | 3,251,925 | Int'l Class 18: Leather and imitation leather and goods made of these materials, namely, wallets, purses, credit card holders, briefcases, attaché cases, handbags, pouches and bags made of leather, travelling bags, key cases, backpacks, leather bands and shoulder straps for handbags and luggage, boxes made of leather; small leather goods, namely, name card cases, vanity cases sold empty, suitcases and school bags. First Use in Commerce: N/A.  Reg. Date: June 12, |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| | | 2007. |
| MONTBLANC PROFILE* | 2,717,140 | Int'l Class 14: Watches, clocks.  First Use in Commerce: N/A.  Reg. Date: May 20, 2003. |
| MONTBLANC SUMMIT* | 2,738,532 | Int'l Class 14: Watches and chronometers.  First Use in Commerce: May 30, 2002.  Reg. Date: July 15, 2003. |
|  | 3,606,193 | Int'l Class 16: Writing utensils, namely, fountain pens, ballpoint pens, pencils, felt-tipped pens, roller ball pens, and text markers; pouches for writing utensils; gift cases for writing utensils; inks and cartridges, namely, writing inks, pen ink refills, and pen ink cartridges; stationery, diaries, paperweights, desk sets; holders for writing and office utensils, namely, pen holders, pencil holders, and holders for desk accessories; and structural parts for all aforesaid goods included in this class.  First Use in Commerce: N/A.  Reg. Date: April 14, 2009. |
| **PANERAI MARKS** | | |
| PANERAI* | 2,340,290 | Int'l Class 14: Chronometers, watches.  First Use in Commerce: N/A.  Reg. Date: April 11, 2000. |
| RADIOMIR* | 2,418,830 | Int'l Class 14: chronometers, watches and clocks. First Use in Commerce: Date not available. Reg. Date: January 9, 2001. |
| PANERAI* | 2,494,170 | Int'l Class 8: folding knives, pocket knives, screwdrivers, hand-operated spanners; hand-operated tools and instruments, namely, tools and instruments having multiple functions in particular knives, screwdrivers and scissors. Int'l Class 9: sunglasses; binoculars, magnifying glass; boxes and cases for the aforementioned goods. Int'l Class 11: torches for lighting. First Use in Commerce: Date not available. Reg. Date. October 2, 2001. |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|------|---------------|------------------------------|
| RADIOMIR* | 2,512,098 | Int'l Class 8: folding knives, pocket knives, screwdrivers, hand-operated spanners; hand-operated tools and instruments, namely, tools and instruments having multiple functions in particular knives, tweezers, screwdrivers and scissors.<br><br>Int'l Class 9: Eyeglasses.<br><br>Int'l Class 11: Torches for lighting.<br><br>First Use in Commerce: Date not available. Reg. Date: November 27, 2001. |
| LUMINOR* | 2,516,018 | Int'l Class 14: chronometers, watches and clocks. First Use in Commerce: Date not available.<br><br>Reg. Date: December 11, 2001. |
| LUMINOR | 2,569,251 | Int'l Class 16: Writing instruments namely, pencils, stationery.<br><br>Int'l Class 18: handbags.<br><br>Int'l Class 25: Clothing, namely, tee-shirts.<br><br>First Use in Commerce: Date not available. Reg. Date: May 14, 2002. |
| LUMINOR | 2,569,253 | Int'l Class 8: screwdrivers.<br><br>Int'l Class 9: sunglasses; binoculars.<br><br>Int'l Class 11: Torches for lighting.<br><br>First Use in Commerce: Date not available. Reg. Date: May 14, 2002. |
| PANERAI | 2,673,704 | Int'l Class 16: pencils.<br><br>Int'l Class 18: handbags.<br><br>Int'l Class 25: shirts, tee-shirts, belts, caps and hats.<br><br>First Use in Commerce: N/A.  Reg. Date: January 14, 2003. |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
|  | 3,004,529 | Int'l Class 14: Boxes and cases for watches; jewelry and precious stones, chronometers, watches and wall clocks.  First Use in Commerce: Date not available.  Reg. Date: October 4, 2005. |
| LUMINOR DAYLIGHT | 3,035,995 | Int'l Class 14: watches, chronometers. First Use in Commerce: Date not available.  Reg. Date: December 27, 2005. |
| SLYTECH | 3,046,425 | Int'l Class 14: jewelry, namely, cufflinks, tie pins, rings, bracelets, earrings, necklaces and brooches; watches, chronometers, wall clocks, watch straps, boxes of precious metal for watches and jewelry.  First Use in Commerce: Date not available.  Reg. Date: January 17, 2006. |
| MARINA MILITARE | 3,174,281 | Int'l Class 14: Cuff links, tie pins, rings, bracelets, earrings, necklaces, brooches; watches, chronometers, clocks, watchbands, wristwatches, boxes of precious metal for watches and jewelry.  First Use in Commerce: Date not available.  Reg. Date: November 21, 2006. |
|  | 3,178,943 | Int'l Class 14: Watches.  First Use in Commerce: 1994.  Reg. Date: December 5, 2006. |
|  | 3,756,691 | Int'l Class 14: watches.  First Use in Commerce: December 31, 1998.  Reg. Date: March 9, 2010. |

18

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| RADIOMIR COMPOSITE | 3,882,739 | Int'l Class 14: Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches being jewellery, key rings of precious metal; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery.<br><br>First Use in Commerce: Date not available.  Reg. Date: November 30, 2010. |
| LUMINOR COMPOSITE | 3,889,408 | Int'l Class 14: Cuff-links, tie clips, rings, bracelets, earrings, necklaces, brooches being jewellery, key rings of precious metal; watches, chronometers, clocks, watch straps, watch bracelets, boxes of precious metals for watches and jewellery.<br><br>First Use in Commerce: Date not available. Reg. Date: December 14, 2010. |
| PANERAI COMPOSITE | 3,947,004 | Int'l Class 14: Watches, chronometers, watch straps, watch bracelets, boxes of precious metal for watches.  First Use in Commerce: N/A.  Reg. Date: April 19, 2011. |
| OFFICINE PANERAI | 4,009,035 | Int'l Class 14: Chronometers, watches and clocks; watch accessories, namely, watch bands, watch straps, watch bracelets, and buckles for watch bands and watch straps; boxes and cases for watches; watch cases, namely, watch rolls. First Use in Commerce: 1999.<br><br>Int'l Class 18: Sports bags; holdalls for yachting equipment and apparel.  First Use in Commerce: April 1998.<br><br>Int'l Class 25: Clothing, namely, t-shirts, wind-resistant jackets, jackets, vests, sweaters, polo shirts, long sleeve shirts, scarves; headwear, hats, caps.  First Use in Commerce: April 1998.<br><br>Reg. Date: August 9, 2011. |
| **BAUME & MERCIER MARKS** | | |
| BAUME & MERCIER GENEVE | 644,569 | Int'l Class 14: Watches, watch cases, watch movements.  First Use in Commerce: N/A.  Reg. Date: April 23, 1957. |

19

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|---|---|---|
| **BAUME & MERCIER** GENEVE * | 1,081,643 | Int'l Class 14: Watches, watch cases and watch movements.  First Use in Commerce: 1946.  Reg. Date: January 10, 1978. |
| RIVIERA* | 1,264,895 | Int'l Class 14: Watches.  First Use in Commerce: January 11, 1980.  Reg. Date: January 24, 1984. |
| *Riviera* * | 1,324,386 | Int'l Class 14: Watches.  First Use in Commerce: January 11, 1980.  Reg. Date: March 12, 1985. |
| BAUME & MERCIER* | 1,638,818 | Int'l Class 14: clocks, watches and chronometers.  First Use in Commerce: N/A.  Reg. Date; March 26, 1991. |
| BAUME & MERCIER LINEA* | 2,020,357 | Int'l Class 14: mechanical watches with manual and automatic winding; electric and electronic watches, movements, cases, dials, watch bands; diver's watches, chronometers; stop watches; clocks, travel clocks and electric and electronic alarm clocks, or with manual winding; jewel watches.  First Use in Commerce: N/A.  Reg. Date: December 3, 1996. |
| CAPELAND* | 2,507,468 | Int'l Class 14: watches.  First Use in Commerce: January 1, 1999.  Reg. Date: November 13, 2001. |
| **IWC SCHAFFHAUSEN MARKS** | | |
| *International Watch Co* SCHAFFHAUSEN | 576,647 | Int'l Class 14: Watch movements, cases, dials, and sheaths.  First Use in Commerce: 1915.  Reg. Date: June 30, 1953. |
| IWC* | 1,205,403 | Int'l Class 14: Watches.  First Use in Commerce: 1917.  Reg. Date: August 17, 1982. |
| *International Watch Co* SCHAFFHAUSEN * | 1,794,885 | Int'l Class 14: Watches and parts for watches.  First Use in Commerce: 1915.  Reg. Date: September 28, 1993. |

| MARK | REG./APP. NO. | GOODS, REG. DATE & FIRST USE |
|------|---------------|------------------------------|
|  | 2,479,518 | Int'l Class 14: Watches.  First Use in Commerce: N/A.  Reg. Date: August 21, 2001. |
| IWC<br>*International Watch Co*<br>*Schaffhausen*<br><br>＊ | 2,516,587 | Int'l Class 14: Watches and chronometers and parts for all of these goods.  First Use in Commerce: N/A.  Reg. Date: December 11, 2001. |
| IWC PORTUGIESER | 3,507,947 | Int'l Class 14: Watches, clocks, and chronographs.  First Use in Commerce: N/A.  Reg. Date: September 30, 2008. |
| **VACHERON & CONSTANTIN MARKS** | | |
|  | 91,444 | Int'l Class 14: Watch cases and movements and detached parts of the same.  First Use in Commerce: 1830.  Reg. Date: May 6, 1913. |
| ✠<br>**VACHERON CONSTANTIN** | 3,114,414 | Int'l Class 14: Cuff links, tie pins, rings, bracelets, earrings, necklaces, brooches, watches, chronometers, clocks, watchstraps, cases of precious metal for watches and jewellery.  First Use in Commerce: N/A.  Reg. Date: July 11, 2006. |
| FLEURS DE MALTE VACHERON & CONSTANTIN | 3,177,232 | Int'l Class 14: Watches, chronometers, wall clocks.  First Use in Commerce: N/A.  Reg. Date: November 28, 2006. |

Hallerman Decl. ¶ 10 & Exs. A-E.

  4. Plaintiffs have used the Marks in the United States for decades, or, in some cases, for nearly two and a half centuries.  Plaintiffs and the Marks have developed a reputation for excellence among all products sold in connection with the Marks, both within the United States

21

and internationally.  Indeed, the Marks are recognized as some of the foremost luxury brands in their product classes in the United States and worldwide.  Plaintiffs' Marks are well-known in the industry and to the public, and have come to symbolize the goodwill of Plaintiffs' businesses. Hallerman Decl. ¶¶ 16-25.

5.      All authorized products sold by Plaintiffs bear one or more of the Marks, either on the products themselves or the associated packaging (the "Plaintiffs' Products").  Hallerman Decl. ¶ 27.

6.      Plaintiffs have spent hundreds of millions of dollars on advertising, marketing and promotions for their brands and the Marks, with advertising campaigns that include full-page advertisements in widely-distributed fashion and news publications.  Plaintiffs' marketing efforts, combined with their attention to quality and construction, have resulted in billions of dollars in retail sales in the United States in the last ten years alone.  Hallerman Decl. ¶ 26.

7.      Over the decades, literally hundreds of millions of consumers have been exposed to the Marks in advertisements, newspapers, fashion magazines, television programs, motion pictures, and virtually all instrumentalities of popular culture, and, as a result, identify Plaintiffs' Products with the Marks.  Hallerman Decl. ¶ 28.

**<u>Defendants' Counterfeiting Activities</u>**

8.      Through the course of its ongoing enforcement efforts, Plaintiffs learned that defendants were advertising and selling on the Internet products designed to imitate authentic Plaintiffs' Products and bearing counterfeit versions of the Marks (the "Counterfeit Products"). *See* Hallerman Decl. ¶ 33; Declaration of Robert W. Seiden, dated December 19, 2011 ("Seiden 12/19/2011 Decl.") ¶¶ 2-3.

9.      Plaintiffs commenced an investigation into these activities and confirmed that defendants, apparently located abroad, were responsible for the marketing and sale of the Counterfeit Products through the websites associated with the domain names and websites identified in Appendix A to the Complaint.  *See generally* Seiden 12/19/2011 Decl.

10.      Plaintiffs' investigation determined that the defendants' domain names and websites were affiliated with one another, and appeared to be selling counterfeit goods. Hallerman Decl. ¶ 35; Seiden 12/19/2011 Decl. ¶¶ 5, 9, 14.

11.      Moreover, some of the websites themselves are designed to appear as if they are authorized distributors or the official websites of Plaintiffs.  For example, the following are examples of pages from several of Defendants' Counterfeit Websites, which are designed to appear like authorized or official websites of Cartier:

*Screenshot of bestcartierjewelry.com:*

*Screenshot of cartierjewelry.us:*

Hallerman Decl. ¶ 35.

     12.    Set forth below are true and correct screenshots from the official Cartier website,

located at www.cartier.com, and an image from Cartier's promotional materials in connection

with its Must Collection, which feature a panther cub.

*Screenshots of Official Cartier Website, www.cartier.com:*

*Promotional Material for Cartier's Must Collection, featuring Panther Cub:*

Hallerman Decl. ¶ 36.

13.     Each defendant website offered for sale counterfeits bearing one or more of the Marks. Seiden 12/19/2011 Decl. ¶ 9 & Ex. A. Many of defendants' websites expressly state that the Counterfeit Products offered for sale are not authentic, but are "replicas" or "fake." *Id.*

14.     Defendants' counterfeit products appeared superficially similar to authentic Plaintiffs' Products and display exact copies of plaintiffs' Marks and other design elements, with ornamentation, design, and labeling intended to appear like the ornamentation, design, and labeling on the authentic product. Declaration of Zane Jones, dated December 13, 2011 ("Jones Decl.") ¶ 9; Declaration of Gregory Bishop, dated December 19, 2011 ("Bishop Decl.") ¶¶ 7, 13; Declaration of John T. Sokol, dated December 16, 2011 ("Sokol Decl.") ¶ 8.

15.     Defendants' counterfeit products all followed this pattern—each displayed copies of one or more of plaintiffs' Marks and/or replicates the ornamentation, design, and labeling of Plaintiffs' Products. *See generally* Seiden 12/19/2011 Decl.; Sokol Decl.; *see also* Bishop Decl. ¶ 13; Jones Decl. ¶ 9.

16.     In the course of the investigation, plaintiffs and their agents purchased several items offered for sale by some of the websites to make certain that the goods were, in fact, counterfeit. Hallerman Decl. . ¶ 37; Seiden 12/19/2011 Decl. 15-16 & Exhs. E-J.

17.     Plaintiffs independently examined these products and confirmed that they are inferior reproductions of Plaintiffs' Products bearing counterfeits of the Marks, complete with unauthorized versions of the packaging Plaintiffs use for genuine Plaintiffs' Products. Sokol Decl. ¶¶ 6-11; Bishop Decl. ¶¶ 6-14; Jones Decl. ¶¶ 6-10; *see also* Hallerman Decl. ¶ 37.

18.     An examination of the trademarks registered by plaintiffs (*see* Finding 3, *supra*) and of the defendants' websites reviewed by plaintiffs (excerpts of which are contained in and attached to the Seiden 12/19/2011 Decl.) indicates that defendants have counterfeited numerous

of plaintiffs' marks for a wide variety of types of goods (including watches, jewelry, handbags and wallets), including at least the following:

| **Goods** | **Number of Marks**[2] |
|---|---|
| Watches | 7 CARTIER Marks |
| | 3 PIAGET Marks |
| | 2 JAEGER-LECOULTRE Marks |
| | 1 MONTBLANC Mark |
| | 5 PANERAI Marks |
| | 3 BAUME & MERCIER Marks |
| | 1 IWC Mark |
| | 1 VACHERON CONSTANTIN Mark |
| Handbags | 3  CHLOÉ Marks |
| | 2 CARTIER Marks |
| Wallets | 2 CHLOÉ Marks |
| Jewelry | 9 CARTIER Marks |

*See* Seiden 12/19/2011 Decl. Ex. A; Finding 3, *supra*; *see also* Seiden 12/19/2011 Decl. ¶¶ 18-20, 22, 25-26, 29-30, 32-33.

20. 19.     Three of the defendants' domain names – bestcartierjewelry.com, cartierjewelry.us and cartierjewellery.us – use the CARTIER trademark in their domain names.

*See* Seiden 12/19/2011 Decl. ¶¶ 6-10; Declaration of Robert W. Seiden dated June 11, 2012 ("Seiden 6/11/2012 Decl.") ¶¶ 7-15.

**The Court's Preliminary Injunction and**
**Defendants' Continuing Willful Counterfeiting Activities**

20.     On December 20, 2011, the Court entered an Order to Show Cause that, *inter alia*, temporarily restrained defendants' unlawful conduct, and plaintiffs served that order to show

---

[2]     The terms "Cartier Marks," "Piaget Marks," etc. refer to the registrations listed in the corresponding headings in Finding of Fact 3, *supra*.

cause upon defendants pursuant to its terms on December 22 and December 23, 2011.  *See* Docket # 12.

21.     On January 3, 2012, the Court entered a preliminary injunction order.  Among other things, this Court's Preliminary Injunction directed defendants to immediately refrain from "manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling, or otherwise offering for sale Counterfeit Products or any other products produced by plaintiffs or confusingly similar to plaintiffs' products, or that otherwise bear, contain, display, or utilize any of the plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the plaintiffs' Marks" and from "using or transferring ownership of the domain names set forth in Appendix A attached hereto, or registering, using, or transferring any other domain name or website making unauthorized use of any of the plaintiffs' Marks."  [Docket #14].

22.     Notwithstanding the terms of the Court's December 20, 2011 Order to Show Cause and the Court's Preliminary Injunction Order, after the entry and service of the Order to Show Cause, defendants established new domain names and websites in violation of that order through which they continued to advertise and sell their counterfeit products.  In particular, after plaintiffs secured the suspension of defendants' websites by serving the Court's orders on various domain name registrars and internet service providers, defendants registered at least two additional domain names at which they set up websites (substantially identical to some of their prior websites) to sell counterfeits of plaintiffs' products.  *See* generally, Seiden 6/11/2012 Decl.

23.     On May 31, 2012, the Clerk of the Court entered a Certificate of Default as to the Default Judgment Defendants.  *See* Docket # 20.

24.     On July 2, 2012, the Court entered an Order that plaintiffs are entitled to a default judgment against the Default Judgment Defendants, and referred the case to the Magistrate Judge for an inquest on damages.  *See* Docket #30, 31.

## CONCLUSIONS OF LAW

1.     The Lanham Act makes statutory damages available at the plaintiff's election at any time prior to the entry of final judgment, where a defendant has made "use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services . . ." 15 U.S.C. § 1117(c).

2.     When a defendant has engaged in willful counterfeiting, a court may assess statutory damages of up to $2,000,000 "per counterfeit mark per type of goods . . ."  15 U.S.C. § 1117(c)(2).

3.     The defendants here have acted with the clear intent to infringe the plaintiffs' registered trademarks by offering counterfeits of those marks.  "Infringement is willful when 'the defendant had knowledge that [the] conduct represented infringement or perhaps recklessly disregarded the possibility [that the conduct infringed].'"  *Philip Morris USA Inc. v. Tammy's Smoke Shop, Inc.*, 726 F. Supp. 2d 223, 224 (E.D.N.Y. 2010) (quoting *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1382 (2d Cir.1993); *see also Hermès Int'l. v. Kiernan*, CV 06-3605 (LDW) (WDW), 2008 WL 4163208, at *3 (E.D.N.Y. Aug. 28, 2008) (quoting *KepnerTregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir. 1999)).

4.     There can be no doubt that the defendants knew that their websites offered and sold infringing and counterfeit products in violation of the plaintiffs' rights.  Indeed, as set forth above, many of defendants' websites admit that their products are "replica" or "fake," and some of the sites blatantly mimic the look and feel of plaintiffs' own Cartier website.  *See* Findings of Fact 11-13.  Even after the Court's December 20, 2011 Order to Show Cause and the Court's

30

Preliminary Injunction Order directed defendants to cease their infringing conduct, defendants affirmatively continued their conduct by establishing and using new domain names and websites to sell their counterfeit goods.  *See* Finding of Fact 22.

     5.    Willfulness may also be inferred by reason of a defendant's default.  *See, e.g., Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d. 501, 504 (S.D.N.Y. 2009) ("[h]ere, by virtue of its default, [the defendant] admitted Louis Vuitton's allegation that it acted knowingly and intentionally or with reckless disregard or willful blindness to Louis Vuitton's rights."); *Tiffany (NJ) Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) ("[b]y virtue of the default, [defendants'] trademark infringement is deemed willful . . .").  Accordingly, the Court may find that the defendants acted willfully based on their failure to appear before this Court to even attempt to dispute the plaintiffs' allegations.  Defendants' counterfeiting should be considered willful and subject to the maximum damages prescribed by 15 U.S.C. § 1117(c)(2).

     6.    Furthermore, the defendants' conduct in this matter is of the kind that Congress attempted to address by providing for statutory damages generally, as well as for substantially greater penalties for willful counterfeiting.  First, counterfeiters typically frustrate any effort to discern plaintiffs' actual damages by failing to keep adequate business records.  *See, e.g., Guess?, Inc. v. Gold Center Jewelry*, 997 F. Supp. 409, 411 (S.D.N.Y. 1998) ([Congress's decision to make statutory damages available as an alternative to actual damages] "'reflected a harsh reality—counterfeiters often do not keep or secrete records of their unlawful activities, thus making proof of the extent of the plaintiff's injury or the counterfeiters' profits impossible as a practical matter.'") (citation omitted).

     7.    Moreover, even if the defendants did maintain business records sufficient to show their sales of and profits from counterfeit products, their failure to appear and to participate in

fact discovery deprives the plaintiffs and this Court of the opportunity to determine the plaintiffs' actual harm, further justifying the imposition of statutory damages. *See, e.g., Sara Lee Corp. v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999) ("[s]tatutory damages are most appropriate when infringer nondisclosure during fact finding leaves damages uncertain.").

8.      In addition, enhanced statutory damages for willfulness not only compensate trademark owners for their damages, but also deter deliberate wrongdoing. *See id.* at 167 ([statutory damages for infringement in trademark as well as copyright] "may be punitive as necessary to deter the defendants, to deter others, and to redress wrongful litigation conduct."); *see also Coach, Inc. v. McMeins*, 11 Civ. 3574 (BSJ) (JCF), 2012 WL 1071269 at *3 (S.D.N.Y. Mar. 9, 2012) (where "a defendant is shown to have acted willfully . . . statutory damages should incorporate not only a compensatory, but also a punitive component to discourage further wrongdoing by the defendants and others.")' *Rolex Watch U.S.A., Inc. v. Jones*, 99 Civ. 2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (same).

9.      Here, defendants' blatantly unlawful counterfeiting activities, continuing even after this Court's Preliminary Injunction, justify the imposition of enhanced statutory damages in the amount of $2 million per mark per type of goods sold.  Such an assessment is justified not only by the defendants' willfulness, but also the massive scale of their counterfeiting scheme, which harms both plaintiffs and the public, and their utter disregard for this Court's authority. *See Nike, Inc. v. Top Brand Co.*, 00 Civ. 8179 (KMW) (RLE), 2006 WL 2946472, at *2 (S.D.N.Y. Feb. 27, 2006), adopted in full by 2006 WL 2884437, at *2 (S.D.N.Y. Oct. 6, 2006) ("the size of the defendants' infringing operations . . . the willfulness of their conduct, and their behavior in this litigation all weigh towards a grant of the maximum in statutory damages.").

32

10.    A district court is "only limited by what [it] considers just" in meting out statutory damages against defendants that engage in counterfeiting. *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004).  However, several courts have drawn an analogy from cases interpreting similar provisions of the U.S. Copyright Act to inform their calculations of statutory damages for trademark counterfeiting:

> [C]ourts consider: (1) 'the expenses saved and the profits reaped;' (2) 'the revenues lost by the plaintiff;' (3) 'the value of the copyright;' (4) 'the deterrent effect on others besides the defendant;' (5) 'whether the defendant's conduct was innocent or willful;' (6) 'whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced;' and (7) 'the potential for discouraging the defendant.'

*Coach, Inc. v. O'Brien,* 10 Civ. 6071 (JPO) (JLC), 2012 WL 1255276 (S.D.N.Y. Apr. 13, 2012) (quoting *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2d Cir. 1986).

11.    Each of these factors weighs heavily against the defendants in this matter.  As plaintiffs have shown, the defendants' conduct here plainly was willful.  In addition, plaintiffs have shown that their Marks have built up enormous goodwill and are extremely valuable in the market for luxury goods.  *See* Complaint ¶¶ 73-79; *see also, e.g., Cartier Int'l B.V., et al. v. Ben-Menachem,* 06 Civ. 3917, 2008 WL 64005, at *1, 2 (S.D.N.Y. Jan. 3, 2008) ("Over the years, plaintiffs have enjoyed extraordinary success by designing, developing, and marketing an extensive line of luxury goods, which are known for their unique shapes, styles, and overall appearances" and "have earned a reputation for high-quality luxury products"; "Plaintiffs' Marks have come to symbolize Plaintiffs' enormous goodwill and are invaluable assets of Plaintiffs."); *Chloé, et al. v. Designersimports.com USA, Inc.,* 07-CV-1791 (CS) (GAY), 2009 WL 1227927, at *2 (S.D.N.Y. Apr. 30, 2009) ("Chloé is a fashion leader in women's clothing and accessories, with a reputation in the United States and throughout the world for high-quality products sold under the CHLOÉ trademark[.]").

33

12.     Although plaintiffs have been deprived of the chance to take discovery of defendants, the defendants presumably enjoyed high sales given the scope of the Internet and defendants' scores of websites.  *See Louis Vuitton Malletier & Oakley Inc.*, 211 F. Supp. 2d at 584 ("While the record contains no evidence of the actual scope of the defendants' sales . . . given the scope of the Internet supermarket, *such sales offerings are presumptively quite high . . .*") (emphasis added); *see also Rolex Watch U.S.A., Inc. v. Jones*, 99 Civ. 2359 (DLC) (FM), 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (recommending increased statutory damages in part because of "the virtually limitless number of customers available" to the defendant over the Internet).  And, the unlawful sale of counterfeit products undoubtedly has harmed plaintiffs' revenues, as the defendants have profited from consumer confusion that they themselves created. *See, e.g., Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 158 (E.D.N.Y. 2010) (remarking that plaintiffs incur greater harm where counterfeiters traffic in "primarily the same type of goods or products" as their genuine offerings).

13.     In any event, the defendants should not benefit from their failure to participate in this litigation, and the damages assessed against them should reflect the fact that they neglected to introduce proof mitigating the relief to which the plaintiffs are entitled.  *See Sara Lee Corp.*, 36 F. Supp. 2d at 169 ("[t]he Second Circuit instructs us that in determining infringement damages, courts are to resolve against the defendants any factual uncertainties . . . when the defendants left the uncertainty by not responding to the evidence of counterfeit sales with evidence of their own."); *see also Philip Morris USA Inc. v. A&V Minimarket Inc.*, 592 F. Supp. 2d 669, 674 (S.D.N.Y. 2009) ("the defendants' failure to respond . . . has left the Court with no information as to any of the factors relating to the defendants' circumstances.  Thus the Court draws every reasonable inference on these points against the defendants.").

34

14.     Furthermore, damages in the range of $2 million per mark per type of goods sold are wholly in line with the damages assessed against defendants in default by courts in this District in a number of extremely similar cases involving sprawling online counterfeiting networks. *See, e.g., Hermes Int'l v. Doe*, 12 Civil 623 (DLC) (S.D.N.Y.) (Default Judgment and Permanent Injunction Order, April 27, 2012) [Docket No. 14] (statutory damages of $100,000,000 for infringement of approximately 20 registered marks); *True Religion Apparel, Inc. et al. v. Xiaokang Lee et al.*, 11 Civ. 8242 (HB) (S.D.N.Y.) (Default Judgment and Permanent Injunction Order, March 12, 2012) (Docket No. 31) (imposing statutory damages of $8,150,000—a figure comprised of damages in the amount of $2,000,000 for each of the plaintiff's three trademarks at issue, and $150,000 for the plaintiff's single copyright at issue— against each of 109 defendants, for a total of $863,900,000 in damages); *Tory Burch LLC, et al. v. Yong Sheng Int'l Trade Co., et al.*, 10 Civ. 9336 (SAB) (S.D.N.Y.) (Default Judgment and Permanent Injunction Order, May 13, 2011) (Docket No. 29) (assessing maximum statutory damages of $2,000,000 per each of the plaintiff's two infringed marks against each of the defendants, for a total of $164,000,000); *Burberry Limited (UK), et al. v. Burberry-Scarves.com, et al.*, 10 Civ. 9240 (TPG) (S.D.N.Y.) (Default Judgment and Permanent Injunction, May 5, 2011) (Docket No. 20) (statutory damages in the amount of $60,000,000); *North Face Apparel Corp. et al. v. Fujian Sharing Import & Export Ltd. Co. et al.*, 10 Civ. 1630 (AKH) (S.D.N.Y.) (Default Judgment and Permanent Injunction, Sept. 13, 2010) (Docket No. 29) (awarding statutory damages of $78,000,000).

15.     In this case, statutory damages in the amount of $78 million is reasonable.  Thus, 15 U.S.C. § 1117(c) provides for statutory damages of up to $2 million *per mark* counterfeited

by defendants, *per type of goods sold or offered for sale*.[3]   As the allegations in the complaint and the evidence submitted in support of plaintiffs' application for a TRO and preliminary injunction show, defendants have counterfeited at least 23 distinct marks for watches, five distinct marks for handbags, nine distinct marks for jewelry and two distinct marks for wallets. These acts of willful infringement with respect to a total of 39 different marks/type of products entitle plaintiffs to more than $78 million in statutory damages.

      16.     What is more, 15 U.S.C. § 1117(d) entitles plaintiffs to $300,000 in statutory damages for willful acts of cybersquatting with respect to three domain names that include the CARTIER mark.  *See* Finding of Fact 19.

      17.     Finally, 15 U.S.C. § 1117(a) permits courts to award plaintiffs their reasonable attorneys' fees and costs incurred in "exceptional cases."  Several courts have held that cases of willful counterfeiting are "exceptional" within the meaning of the Lanham Act.  *See, e.g., Church & Dwight Co., Inc. v. Kaloti Enterprises of Michigan, L.L.C.*, 697 F. Supp. 2d 287, 293 (S.D.N.Y. 2009) ("most courts have found both [attorneys' fees and statutory damages] appropriate in the 'exceptional case' of willful infringement.").  Rather than request an additional award of fees, however, plaintiffs have requested that their reasonable attorneys' fees and costs be considered in the Court's calculation of statutory damages.  *See, e.g., Victorinox AG v. U.S. Flash & Technologies LLC*, 09 Civ. 9266 (RJH) (FM), 2010 WL 5691991, at *4 (S.D.N.Y.

---

[3]     *See, e.g., Gucci Am., Inc.*, 2008 WL 512789, at *4 (salient "legal question" is the definition of "'types of goods' for the purpose of measuring damages within the meaning of 15 U.S.C. § 1117(c)(2).").  In general, goods are divided into distinct "types" for purposes of calculating damages "based on the functional purpose of the product."  *See id.* (allocating counterfeit goods into several functional categories, but distinguishing, for example, between "handbags," "wallets," and "handbag and wallet sets"); *see also Nike, Inc.*, 2006 WL 2946472, at *3 (distinguishing between "t-shirts, fleece sweatshirts, and polo shirts").

Oct. 21, 2010) ("recommending a lump sum intended to compensate Victorinox not only for its statutory damages but also for its fees and costs is an . . . appropriate course of action here.").

## CONCLUSION

18.     Based on the foregoing, the Court determines that plaintiffs are entitled to a monetary award of statutory damages of $78,300,000.00, to be awarded jointly and severally against the Default Judgment Defendants, namely, defendants Montesol OU, Bantam Inter LP, and UAB Westcargo, all doing business as the domain names and websites set forth in Appendix A attached hereto, and the partnerships and unincorporated associations identified by the foregoing domain names and websites (in addition to such other relief as the Court deems appropriate that has been requested in the proposed Default Judgment and Permanent Injunction attached to the Court's June 14, 2012 Order to Show Cause).

Dated:  October 1, 2012                    Respectfully Submitted,

                                           KAYE SCHOLER LLP

                                           By: _____
                                           Paul C. Llewellyn
                                           425 Park Avenue
                                           New York, New York 10022
                                           Telephone: (212) 836-7828
                                           Facsimile: (212) 836-8689

                                           Jennifer L. Co
                                           3000 El Camino Real
                                           2 Palo Alto Square, 4th Floor
                                           Palo Alto, California 94306
                                           Telephone: (650) 319-4500
                                           Facsimile: (650) 319-4700

                                           *Attorneys for Plaintiffs*

37

# APPENDIX A

ajmld.com
bag-n-shoes.com
bestcartierjewelry.com
best-watch.net
botiqiqo.comoj.com
brandbagsmania.com
buybags.org
buy-handbag-online.com
cartierjewelry.us
caxaqoha.tripod.com
cool-watches.com
dafafuci.comoj.com
discountfendi.com
discounthandbagsandshoes.com
earthgrocerybags.com
Euro-Watch.co
fafixopo.comoj.com
fashion-purses.com
fashion-showcase.com
fashionsline.com
fastserversemployment.com
fesolupe.comxa.com
firstbrandstore.com
g4g.info
handbagsbylesliejay.com
hekajoku.tripod.com
highbrand.org
horaduwa.comule.com
hottestfiles.com
jizumuta.comze.com
jujexis.comoj.com
jvarnoso.com
keguhav.comze.com
lenekepi.comoj.com
loyovoq.comze.com
luxhandbagsstore.com
milan-luxury.com
my-replica-club.com
my-replica.zone.com
newidubi.tripod.com
online-brands-shopping.com
pusituqe.tripod.com
qabeliri.comze.com
qeyopab.comze.com

Replica-bag.co
replicabrandclub.com
replica-handbags.co
replicahandbagsandshoes.com
replicator.co
retomaro.tripod.com
Superior-replica.co
symbolgifts.com
timobed.herobo.com
tiquyuq.comoj.com
todayhottrends.com
topbrandhandbags.net
topbrandmy.com
topbrandonlinezone.com
topbrandreplica.net
topbrandsclub.net
top-cart.net
topmodashop.com
ware4sell.com
watch-clone-com
watch-replica.net
xerinahe.comze.com
xiyoxoye.comxa.com
yihisix.comxa.com
zibuduwu.comoj.comlotewici.comoj.com
zuvotaf.comze.com
hot-brands.net
brand-shoesstyle.org
brand-shoesstyle.net
onlineshoptopbrands.com
brand-shoesstyle.com
brandshoes-brandbags-online.com
top-brands-online.net
top-brend.com
top-brand-shop.net
brandeshop.biz
delta-shoping.com
fashionclothesforless.com
greenclothesstore.com
allbrandclub.com
replica4you.net
1replicashop.com
topbrand-club.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of October, 2012, I caused the foregoing

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

CONCERNING DEFAULT JUDGMENT DAMAGES ("Proposed Findings") to be served upon

defendants by causing (a) hard copies of the Proposed Findings to be sent by Federal Express to

the physical addresses listed on Attachment A to the Court's Scheduling Order dated July 31,

2012 ("July 31, 2012 Order") (a copy of which is appended hereto); and (b) electronic copies of

the Proposed Findings to be emailed to the email addresses set forth in Attachment A to the July

31, 2012 Order.

_____
Paul C. Llewellyn

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                        :
RICHEMONT INTERNATIONAL S.A. et al.,
                        :
          Plaintiffs,           11 Civ. 9322 (JGK)(HBP)
                        :
   -against-               SCHEDULING
                        :   ORDER
MONTESOL OU, et al.,
                        :
          Defendants.
                        :
------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/31/12

       PITMAN, United States Magistrate Judge:

       This matter having been referred to me to conduct an inquest and to report and recommend concerning plaintiff's damages, it is hereby ORDERED that:

       1.   Plaintiffs shall submit proposed findings of fact and conclusions of law concerning damages no later than October 1, 2012. All factual assertions made by plaintiff are to be supported by either affidavit or other material of evidentiary weight.

       2.   Defendants shall submit their response to Plaintiffs submissions, if any, no later than October 31, 2012. <u>IF DEFENDANTS (1) FAIL TO RESPOND TO PLAINTIFFS' SUBMISSIONS, OR (2) FAIL TO CONTACT MY CHAMBERS BY OCTOBER 31, 2012 AND REQUEST AN IN-COURT HEARING, IT IS MY INTENTION TO ISSUE A REPORT AND</u>

RECOMMENDATION CONCERNING DAMAGES ON THE BASIS OF
PLAINTIFFS' WRITTEN SUBMISSIONS ALONE WITHOUT AN IN-
COURT HEARING. See Transatlantic Marine Claims Agency,
Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir.
1997); Fustok v. ContiCommodity Services Inc., 873 F.2d
38, 40 (2d Cir. 1989) ("[I]t [is] not necessary for the
District Court to hold a hearing, as long as it ensured
that there was a basis for the damages specified in a
default judgment.")

     3.   Plaintiffs shall serve copies of this Order
upon defendants by Federal Express to the physical
addresses set forth in Attachment A, no later than ten
days from the date of this Order.  With respect to
those defendants for which no physical address is
available, plaintiffs shall serve copies of this Order
via email to the email addresses set forth in
Attachment A no later than ten days from the date of
this Order.

Dated: New York, New York
       July 31, 2012

                           SO ORDERED

                           HENRY PITMAN
                           United States Magistrate Judge

2

Copies Transmitted To:

Paul C. Llewellyn, Esq.
KAYE SCHOLER LLP
425 Park Avenue
New York, New York 10022

Jennifer Lee Co, Esq.
White & Case LLP
1155 Avenue of the Americas
Suite 2040
New York, New York 10036

ATTACHMENT A

| Defendant | Email address from domain name WHOIS record | Other email addresses | Addresses successfully used in course of case |
|---|---|---|---|
| Montesol OU | | jimmy.ericsson@gmail.com<br>toton1979@gmail.com<br>inforeplica@gmail.com<br>support@replica-handbags.co<br>support@topbrandclub.com<br>info@superior-replica.co | PT Montesol OU, 13 A Narva maantes Str., Talinn, 10151 Estonia |
| Bantam Inter LP | | sales@watchreplica.co<br>sale@watchreplica.co.uk<br>wpbera@gmail.com<br>sales@watchreplica.uk.com | |
| UAB Westcargo | | sales@bestcartierjewelry.com<br>flower.sword@hotmail.com<br>support@top100-shops.com | UAB Westcargo, Silutes pl.57, LT 5800 Klaipeda, Lithuania |
| **Default judgment defendant domain names (Appendix B-1 to Proposed Default Judgment):** | | | |
| bestcartierjewelry.com | flowersbag@mail.com | flower.sword@hotmail.com<br>jewellerylove@hotmail.com<br>sales@bestcartierjewelry.com<br>support@topbrandclub.com | |
| best-watch.net | pauldigg@gmail.com | info@best-watch.net<br>support@best-watch.net<br>support@topbrandclub.com | |
| buybags.org | koffeinx@gmail.com | support@buybags.org<br>support@topbrandclub.com | |
| cartierjewelry.us | cartierjewelrystore@gmail.com | CartierOnsale@gmail.com<br>cartierjewelrystore@gmail.com<br>sales@cartierjewelry.us<br>support@topbrandclub.com | |
| cool-watches.com | dshrupkin@gmail.com | support@topbrandclub.com<br>support@cool-watches.com | |

| | | | |
|---|---|---|---|
| discounthandbagsandshoes.com | iharkharytonchyk@gmail.com | support@topbrandclub.com | |
| | | support@euro-watch.co | |
| Euro-Watch.co | wpbera@gmail.com | support@topbrandclub.com | |
| fashion-purses.com | fashion-purses.com@proxy.dreamhost.com | support@topbrandclub.com | |
| | | tpynak@gmail.com | |
| fastserversemployment.com | protect@whoisguard.com | support@topbrandclub.com | |
| g4g.info | levston@yahoo.com | support@topbrandclub.com | |
| highbrand.org | admin@pharmadol.org | support@topbrandclub.com | |
| hottestfiles.com | kasturbanagar@gmail.com | support@topbrandclub.com | |
| jvarnoso.com | ketorref3@googlemail.com | support@topbrandclub.com | |
| my-replica-zone.com | MarkGreen007@gmail.com | support@topbrandclub.com | |
| | | support@replica-bag.co | |
| Replica-bag.co | wpbera@gmail.com | support@topbrandclub.com | |
| replicabrandclub.com | | support@topbrandclub.com | |
| | | | Polydex Sales, replica-handbags.co, Suite 1, The Studio, St. Nicholas Close, Estree Hertfordshire, WD63EW, Great Britain |
| | | support@replica-handbags.co | |
| replica-handbags.co | toton1979@gmail.com | support@topbrandclub.com | |
| | | support@replicator.co | |
| replicator.co | sviatosiberin@gmail.com | support@topbrandclub.com | |
| | | support@topbrandclub.com | |
| Superior-replica.co | toton1979@gmail.com | idima@hotmail.com | |
| | | ctacebu4@gmail.com | |
| todayhottrends.com | ctacebu4@gmail.com | support@topbrandclub.com | |
| topbrandhandbags.net | contact@privacyprotect.org | support@topbrandclub.com | |
| topbrandsclub.net | | support@topbrandclub.com | |
| top-cart.net | youshchenco@gmail.com | support@topbrandclub.com | |
| ware4sell.com | AdrianusGDam@teleworm.com | support@topbrandclub.com | |
| | | info@watch-clone.com | |
| | | support@topbrandclub.com | |
| watch-clone.com | melvined@gmail.com | inforeplica@gmail.com | |
| | | support@watch-replica.net | |
| | | support@topbrandclub.com | |
| watch-replica.net | marcos3476@yahoo.com | inforeplica@gmail.com | |
| hot-brands.net | | support@topbrandclub.com | |

| Website | Email 1 | Email 2 |
|---|---|---|
| brand-shoesstyle.org | | support@topbrandclub.com |
| | wae1s494e4ce609c5d8d@oqiji874d93000d54bd95.priv atewhois.net | |
| brand-shoesstyle.net | | support@topbrandclub.com |
| onlineshoptopbrands.com | contact@privacyprotect.org | support@topbrandclub.com |
| | mufgden4dce5b94156f@oqiji874d93000d54bd95.priv atewhois.net | |
| brand-shoesstyle.com | | support@topbrandclub.com |
| brandshoes-brandbags-online.com | | support@topbrandclub.com |
| | | canadianreg@gmail.com |
| top-brands-online.net | support@ruler-domains.com | support@topbrandclub.com |
| top-brand-shop.net | | support@topbrandclub.com |
| brandeshop.biz | mail.spg@gmail.com | support@topbrandclub.com |
| delta-shoping.com | | support@topbrandclub.com |
| fashionclothesforless.com | | support@topbrandclub.com |
| greenclothesstore.com | m13x@mail.ru | support@topbrandclub.com |
| allbrandclub.com | contact@privacyprotect.org | support@topbrandclub.com |
| replica4you.net | | support@topbrandclub.com |
| 1replicashop.com | | support@topbrandclub.com |
| topbrand-club.com | dmytro.go@gmail.com | support@topbrandclub.com |
| cartierjewellery.us | cartierjewellerystore@gmail.com | |
| mybestlovejewelry.com | flowersbag@gmail.com | sales@MyBestLoveJewelry.com |
| | | |
| **Default judgment defendant websites (Appendix B-2 to Proposed Default Judgment):** | | |
| botiqiqo.comoj.com | | support@topbrandclub.com |
| caxaqoha.tripod.com | dns-admin@lycos-inc.com | support@topbrandclub.com |
| dafafuci.comoj.com | | support@topbrandclub.com |
| fafixopo.comoj.com | | support@topbrandclub.com |
| fesolupe.comxa.com | | support@topbrandclub.com |
| hekajoku.tripod.com | dns-admin@lycos-inc.com | support@topbrandclub.com |
| horaduwa.comule.com | | support@topbrandclub.com |
| jizumuta.comze.com | | support@topbrandclub.com |
| jujexis.comoj.com | | support@topbrandclub.com |
| keguhav.comze.com | | support@topbrandclub.com |

| | | |
|---|---|---|
| enekepi.comoj.com | | support@topbrandclub.com |
| loyovaq.comze.com | | support@topbrandclub.com |
| newidubi.tripod.com | dns-admin@lycos-inc.com | support@topbrandclub.com |
| pusituqe.tripod.com | dns-admin@lycos-inc.com | support@topbrandclub.com |
| qabeliri.comze.com | | support@topbrandclub.com |
| qeyopab.comze.com | | support@topbrandclub.com |
| retomaro.tripod.com | dns-admin@lycos-inc.com | support@topbrandclub.com |
| timobed.herobo.com | | support@topbrandclub.com |
| tiquyuq.comoj.com | | support@topbrandclub.com |
| xerinahe.comze.com | | support@topbrandclub.com |
| xiyoxoye.comxa.com | | support@topbrandclub.com |
| yihisix.comxa.com | | support@topbrandclub.com |
| zibuduwu.comoj.com | | support@topbrandclub.com |
| lotewici.comoj.com | | support@topbrandclub.com |
| zuvotaf.comze.com | | support@topbrandclub.com |

**Additional email addresses potentially connected to default judgment defendants:**

- ambrazas.tomas@gmail.com
- daina@kniupsius.lt
- vilismonis@gmail.com
- infoeuroreplica@gmail.com
- infowatchclone@gmail.com
- d.s.ssc@gmail.com
- support@topstorehelp.com